v. Lamont McKenzie, Defendant Appellee, arguing for the Appellant, Katrina M. Kuhn, arguing for the Appellee, R. Christopher White. All right, we will proceed with the oral argument. Thank you for calling the case. And, Counsel Kuhn, you may proceed. Thank you, Your Honors. Good morning, Your Honors. Good morning, Counsel. May it please the Court, Katrina Kuhn for the people of the State of Illinois. The trial court erred in granting defendants' motion to suppress in this case. The officer stopped the defendant for making an illegal left turn. In suppressing the contraband that was recovered as a result of that traffic stop, the trial court relied on a single decision of another appellate district that interpreted the statute governing left turns. This court should reverse the trial court's ruling for these reasons. First, the Illinois statute governing left turns requires such turns to be completed in the innermost lane available on the road onto which the turn was made. Second, even if the court disagrees with the people's interpretation of the statute, Officer Florence operated under a reasonable belief that the defendant violated the vehicle code by making an illegal left turn. And third, because Officer Florence had no reason to suspect his initiation of the traffic stop was not supported by the law, this case warrants the application of the good faith exception to the exclusionary rule. Now, this court's standard of review is de novo. No deference is owed to the trial court's ruling because no facts are disputed and the court is being asked to resolve questions of law. As to my first point, section 11-801A2 of the vehicle code requires left turns be completed in the innermost lane available on the road onto which the turn is made. The first sentence of the statute requires motorists to turn in the correct direction and onto, quote, a lane lawfully available on the road onto which the turn has been made. The statute does not state that a turn may be made into any lane. The left lane here was the only lane onto which the defendant could lawfully complete a left turn. Excuse me. The second sentence of the statute that begins whenever practicable also governs how the turn should be made by stating that a vehicle must stay left of the center of the intersection. Here, defendant bypassed the left lane and made a wide turn into the outer lane or the right lane of northbound Highway 41 as shown on the map entered into evidence. This second sentence of the statute cannot be interpreted to allow a turn into the rightmost lane. By making such a wide-arcing left turn, the turning vehicle would then be changing lanes while executing a turn and changing lanes in the middle of an intersection, creating a safety hazard. The statute has been given a lone interpretation by one panel in another appellate district which the trial court in this case was required to follow. This court is not similarly restricted. Not only is the 4th District's decision in People v. Walker not binding here, its interpretation of the statute is not persuasive. Moving to my second point, the police officer here acted with an objectively reasonable belief that defendant committed a traffic violation in executing his left turn. A police officer need not conclusively establish a violation of the vehicle code before initiating a traffic stop. In reviewing the officer's actions, this court must apply an objective standard and consider whether the facts available to the officer at the moment of the stop would lead a reasonably prudent person in the same circumstances to believe that the stop was justified. Here, Officer Florence initiated this traffic stop with an objectively reasonable belief that a traffic violation occurred. Again, at the time of this stop, no appellate district in Illinois had spoken on this statute. Furthermore, the stated reason for this stop was supported by the language of the statute. Courts in at least two other jurisdictions have construed language comparable to that in the Illinois statute to require a motorist to turn into the leftmost lane when completing a left turn. The Montana and Ohio statutes that are set out in my brief contain language comparable to the Illinois statute. Instead of stating the turn must be made so as to leave the intersection in a lane lawfully available to traffic, the Montana and Ohio statutes require the turn to be made to leave the intersection to the right of the center line of the roadway. The Montana and Ohio courts have interpreted that comparable provision to require a motorist to complete the left turn into the leftmost lane possible. Walker provided one reading of the statute, and that reading is incorrect. The officer's understanding of the law governing left turns is consistent with multiple decisions interpreting comparable language. Different interpretations of the statute establish that reasonable minds can read the statute differently. The officer's interpretation was objectively reasonable and supported a belief that a traffic violation occurred. Lastly, even if this court was to conclude that the officer acted on a mistaken belief that the traffic stop was justified, this case warrants the application of the good faith exception to the exclusionary rule. The exclusionary rule is designed to deter flagrant police misconduct, and the exclusion of evidence obtained by officers acting in good faith is a last resort. The officers' acts here were neither sufficiently deliberate to require deterrence nor sufficiently culpable to justify suppression of the evidence recovered in the traffic stop. There is no culpable police conduct to address here simply because there is absolutely no basis to find that a reasonably well-trained officer would have known at the time of this traffic stop that the stop was not valid. It must be noted that the trial court granted the defendant's motion to suppress solely based on Walker, which was issued after the date of the stop in this case. Because no appellate decision on this point had been issued at the time, it cannot be argued that the officer's basis for the stop was contrary to any Illinois precedent, much less any binding precedent, or that the officer's understanding of the law was erroneous. The officer's understanding of the law to support this traffic stop bears all the markings of good faith. The officer's stated purpose for the traffic stop was consistent with the language of the statute and not contrary to any Illinois court decision. In conclusion, this court has no basis to conclude that the officer's understanding of the left turn statute was either incorrect or that the officer knew he acted outside the bounds of the law. Your Honors, that concludes my opening argument, and I am now available for questions. Justice Jorgensen, you may proceed if you have questions. My question is, where do you read in the statute that upon exiting the intersection, any lane is directed? That was not worded the best. My point is, where in the statute does it direct a driver to go into the lane closest to the center lane or the lane farthest from the center lane? Well, Your Honor, the statute does say, is written generally. The statute says, in any lane lawfully available. Now, the statute here does not say the leftmost lane or the rightmost lane. Now, statutes, particularly traffic laws, have to be written generally. They have to be written broadly enough to encompass any possible situation. There's not a left turn statute for a situation where a defendant has two lanes to turn in or three lanes to turn in, et cetera. The statute has to be able to be used when a person is turning in their neighborhood or whether they're turning in a suburban setting, such as in this case, or whether they're turning on an interstate where there are multiple lanes. So the statute here, the statute does not say any lane lawfully available because there are many situations that could be... I understand about traffic laws. The question is, where does the statute require the driver to enter into a specific lane? My point is, it doesn't. It doesn't require the driver, the way I read it, it doesn't require the driver to enter a specific lane. Well, Your Honor, the statute was written, again, not to address just this scenario, where there is an inner lane or an outer lane. If the statute said that the driver could turn into any lane, then if there was a situation, such as I set out in my brief, where there are two cars that are turning left at the same time, then those cars technically could go into any lane. They wouldn't have to stay in their lanes. Those cars could change lanes while they were turning. That would lead to unsafety, and this court should consider... But that's not the scenario here. Aren't we to judge what the police officer did based on this set of circumstances, not potentially what could have been? Well, Your Honor, the court should also consider the last sentence of the statute, which says, whenever practicable, the left turn shall be made in the portion of the intersection to the left of the center of the intersection. And the only reasonable interpretation of that is that that must happen into the leftmost lane, otherwise the turn would be happening and encroaching on the other traffic. But doesn't that also say, whenever practicable, shall be made in that portion of the intersection as opposed to the roadway, the desired road upon which the driver is making the left turn? Yes, Your Honor, but in order to complete the turn, if the statute is read to allow that kind of a wide turn and an arcing turn, it's necessary, it would necessarily occur that the driver in making that turn to the outer lane would be violating the second sentence of the statute, and the statute needs to be read as a whole. In this case, did the police officer ever indicate that the driver had not conformed in his driving through the intersection? The officer in this case said that the stop was based on the fact that the defendant turned into the left lane, I'm sorry, pardon me, turned into the right lane rather than the left lane. There were no facts as to what happened in the intersection. Now, Your Honor, if I may, I'm sorry, please go ahead. I'm sorry, I was just going to say I have no further questions. Justice Hudson, do you have any questions? I do. Ms. Coon, the argument that you're making now that the officer involved had an objectively reasonable basis to believe that a traffic violation had been committed, the Walker case had not yet been decided at the time that the officer effectuated the stop. Well, my question is, did you make that argument in the trial court, or are you making an argument for the first time on appeal? Your Honor, first I would like to respond by saying that the issue was not waived even if this court found that the issue was not preserved. Forfeiture does not limit this court's ability to consider the issue. Now, the officer testified here that the stop was initiated based on the defendant's left turn. The people argued in the trial court that the officer acted on a correct understanding. You know, the words good faith were not stated. It was also argued in the state's motion to reconsider that the officer was completing the stop based on a reasonable understanding of the law. But you did not specifically make the same argument to the trial court. Is that correct? The argument was not as fully developed as it was in the trial court as it is here, no, Your Honor. All right. Well, you're absolutely correct that forfeiture is a limitation on the parties. It's not binding on our court, but why would we not find, it's sort of a novel argument not raised before, why should we not find that it was forfeited? Well, Your Honor, we do. We do think it was before the trial court here. You know, here, this is kind of an unusual situation. You know, we're dealing with, you know, a situation here where at the time of the stop, you know, Walker had not been decided. There was no reason for this officer to know any contrary holding. We would ask that you consider this issue in order to correctly develop the law on this case. And, you know, there is a dearth of law on this point. So we felt it was suitable to raise here. The Walker case, as you've acknowledged, obviously does not favor your position. It's contrary to your position. It was from another district and technically it is not binding on us. We recognize that. But I think you also sort of made the argument that it shouldn't even be considered as persuasive. What is that based on? Why shouldn't we consider it at least persuasive? Because it's wrong. Because, Your Honor, respectfully, it's an incorrect decision. You know, in actually responding to Justice Jorgensen, some of Justice Jorgensen's questions, you know, I would like to draw your attention to, you know, the materials that I moved to cite as additional authority, and that would be the rules of the road. Statute should be construed in, you know, in accordance with the rules of especially traffic laws. Obviously traffic laws should be considered in accordance with the rules of the road. Now, should the court decide to consider the authority I have, I have moved to additionally cite, you know, the directions of the Illinois Secretary of State to drivers in Illinois are consistent with the people's reading of the statute and with the officers finding that a vehicle code violation occurred here. That is how often that is how drivers in Illinois are taught. They are taught to turn into the leftmost lane or the innermost lane that is available to them. Now, Walker, as I said, Walker, we respectfully disagree. It's a decision of another district. I find it was, it was rather myopic. It did not, it did not come. It did not contemplate that there's more than one reasonable reading of the statute. Now Walker did hold a statute in Walker's opinion. The statute was unambiguous, correct? Correct. If we were to find, if we were to agree with that, what does that do to your argument about the objectively reasonable basis for, for effectuating the stop? If we find the statute is unambiguous as Walker did, where does that leave your argument about objectively reasonable stuff? If the, if this court finds under Walker that the statute was unambiguous, then, then I assume this court would then be finding that the officer was operating under a mistake of law and that the officer was not reasonably interpreting the law, which as I've argued is, is not, does not seem to be the case. And then this, then, uh, this, the people would argue and they would also be finding out the secretary of state was, was incorrect in, in interpreting the law. And then, uh, the people would argue that the, um, good faith exception to the exclusionary rule should apply because the officer, even if he did make a mistake of law, you know, that the officer had, uh, objectively reasonable, good faith belief that there, that a traffic violation occurred, even if it was, even if this court found it was, you know, contrary to this court's potential reading of the statute. All right. That's all I have. Ms. Kuhn. Thank you. All right. Thank you, Justice Hudson. Um, Ms. Kuhn, you have requested to supplement with additional authority and you've just mentioned that. And primarily it was, uh, information from the Illinois rules of the road, 2020, and a picture that relates to that. Is that correct? Your honor. I, I, I, I attached two documents. One, one has a page 10 at the bottom and one has a page 31 at the bottom. Okay. They're both, they're both from, they both reflect the Illinois rules of the road. And one is from the actual rules of the road. And one is from a course workbook that is, that I believe is used to educate drivers about what the appropriate traffic laws are. Okay. Um, I will ask counsel when we get to Mr. White, if he, you know what his position is on the supplement, but let me ask this, are the rules of the road, the law that we have to follow, or is it, is it a manual determined or, you know, prepared to assist drivers in learning what the rules and the laws are? Well, I think it, I think it's, I think it's both. If I, if I remember, if I understand your question correctly, um, you know, the, the rules of the road, you know, traffic laws, as I said before, have to be written broadly. Um, you know, police officers will, will execute, you know, traffic stops based on their understanding of the law here. You know, as we know, you know, before Walker, to my knowledge, there was no appellate case or no real discussion of what this, of how to interpret this statute. The court should not raise those issues themselves. It could be because maybe this is the first time or Walker was the first time it was actually raised. You have not found any other Illinois law that says Walker is wrong or any law that precedes Walker that decides it differently. Have you? I have not found any case prior to Walker. I'm not aware of any, your honor. Um, I would like to just point out too, that, you know, when the Walker, when the stop occurred in Walker, obviously, you know, you know, the court in Walker didn't, didn't address or didn't, didn't, uh, point out any authority that existed at that time either. And so at the time the stop occurred in Walker, the Walker officer was relying on his understanding just of the bare statute itself. There was no, you know, something, there was no appellate precedent, which it wasn't. So the Walker officer and the officer here both initiated the stop based on the same reading of the statute. So, and, and that combined with the, you know, the rules of the road, you know, which, which I argue this court can consider, you know, I'll go to my argument that the officer's interpretation of the statute was objectively reasonable. Isn't there a specific disclaimer that the rules of the road should not be considered the law of the state of Illinois? Well, I, I don't think the rules of the road, you know, there's, they're not statutes, obviously they're not statutes, but I think a court can consider them when trying, when, when the court is called upon to interpret a statute. And I think, again, I think this goes to the reasonableness of the officer's belief, um, that, that, that the turn in this case was not, did not comply with the statute. All right. In terms of, uh, your, you have cited Steen and Graham from Montana and Ohio respectively. And isn't the statute, the statute in Montana and Ohio are the same. So it makes sense that those two States might follow that language, but is the statute, are the statutes in Montana and Ohio the same as in the state of Illinois? Same language, same, same, uh, if you wanted to modify all the sentences, could you do it precisely? Um, I, you, you cut out a little bit there, Your Honor, on the, on your question, but if I understand it correctly, you're asking if, if there's a, there's a, if there's a relevant difference between this, the language in the Montana and Ohio statutes and our statute, is that correct? Yes, that's correct. Okay. Okay. Um, well, the Montana and Ohio statute said the left turn must be made. So as to leave the intersection to the right of the center line of the roadway being entered. Now that is effectively the same direction, you know, the same stat, the same requirement or the same, you know, uh, language here, because if you're saying that a car needs to leave the intersection to the right of the center line of the roadway, meaning it must be going in the direction it's turning into, it doesn't, these statutes in Montana and Ohio don't specify a lane either. There must be a certain lane either. However, the courts in Montana and Ohio have interpreted that this statute with comparable language to require the motorist to turn into the leftmost lane. All right. The issue in our case really is the, whenever practicable sentence, I think. Um, and it says whenever practicable, which is not a mandatory, um, the left lane shall be made, or left turn shall be made in that portion of the intersection to the left of the center of the intersection. There could be, based upon that sentence, there could be circumstances where that would not be practicable, correct? Uh, that's correct, your honor. And in this case, don't we have some evidence or testimony that, uh, defendant recognized a police vehicle behind it, whether it had lights and sirens on it or not, and chose to move to the right to get out of its way. Well, your honor, I believe that that was in the record. However, you know, officer Florence here also state, or the stipulated facts indicated that, that there was nothing that was preventing defendant from turning into the left lane. So whatever defendant's reason was for going to the right lane, doesn't mean that he didn't commit a traffic violation. The officer here in question is, is performing as, as I read the record detective duties. He's not a frontline traffic officer, is he? Uh, your honor, I'm not, I'm not aware of, of what his, what this officer's background is. I assume all police officers are, are warranted to conduct traffic stops if they are sworn officers. He was not looking to make a specific traffic stop that day. Was he, it wasn't his job that particular day to do, um, traffic interdictions, uh, based upon a certain location and cars coming and going from that location. Your honor, the officer's subjective mindset is really not an issue here. Um, the issue is whether the officer had an objectively reasonable belief that a traffic violation occurred. Um, and this court held in 2011 in people versus Haywood, that an objectively reasonable stop is not invalid. Even if the officer acted out of an, any improper dual motivation. Now we would argue that that is not the case here, but if this court, you know, thinks there is based on that fact, you know, we would argue that that does not make the stop anything less than objectively reasonable in our analysis. Well, as in Walker, aren't we to consider the totality of the circumstances surrounding this particular stop to determine what is subjectively or possibly objectively reasonable? Well, your honor, again, I would argue that this, this test is one of the objective reasonableness. Um, you know, we, we don't consider the subjective understanding, uh, or the subjective basis where the stop, um, again, you know, that, that, uh, that the people strongly assert that that should not be considered here. All right. In terms of your good faith arguments, um, looking at the Heinen case from the Supreme court, they were consistent both in majority and in concurrence that the issue is objectively reasonable to the officer, objectively reasonable. And how was his stop in this case under our statute, not Montana's and not Ohio's, but our statute objectively reasonable? Well, your honor, because there was, because the officers reading of the statute, you know, is it can fully be supported by, you know, his stop was fully supported by a reasonable reading of the statute. It was practicable for this, this defendant in this case, to turn into the left lane. Uh, he did not, uh, a reasonably well-trained officer who is aware of, of all relevant authority, including the rules of the road, um, would, you know, would have thought that this, at the time of this traffic stop, it was a valid stop, you know, that there's no, um, you know, that there's nothing to, to conclude. There's no reason to conclude that this officer's action was culpable or deliberate. And, uh, it was, the officer was not acting in derogation or, or ignorance or, or, uh, violation of any, of any, uh, current, um, or any appellate precedent or any precedent. All right. And finally, uh, looking at this particular statute and, um, looking at our responsibility, is it a very hard question of statutory interpretation to read 11802? I'm sorry, 801, um, to in two separate parts as it's written a compound sentence in the first sentence and a very simple sentence in the second is, is that very hard to do? Well, um, I think you're asking me if the meaning of the statute is clear, you know, you know, while we've been talking about it now for 20 some minutes, um, you know, I think a statute is ambiguous if reasonably well-informed minds can differ. I think we have all probably thought about this statute more than anybody else, you know, in, in Illinois at this point in our lives. And, uh, you know, after spending this much time discussing different interpretations of statute, you know, I would ask this court to carefully consider Walker's determination that there's only one reasonable reading. And we've probably considered it much more than either, uh, officer Florence, or if I have his name wrong, I apologize, or anybody who was involved in that stop. All right. Uh, I have no further questions. Were there any questions that related to mine, um, justice Jorgensen or justice Hudson? Oh, thank you. I have none. Thank you. All right, Mr. White, you may proceed. Thank you. Um, may it please the court, Chris White on behalf of, or from all set on behalf of the defendant here, uh, Mr. McKenzie, um, this court should affirm the trial court's order, granting the defendant's motion to dismiss where he did not violate section 11 dash eight Oh one of the vehicle code. The state argues that the stop of the defendant was based on the police officer's belief that the defendant's turn violated the code. However, the turn was not in fact unlawful. So the officer could not have reasonably interpreted the statute as prohibiting it. The statute here requires that a left turn be made so as to leave an intersection in a lane lawfully available to traffic moving in such direction upon the roadway being entered. Um, by definition a lane provides more than one option or certainly could provide more than one option. As the Walker court found the plain language of the statute permitted the defendant to leave the intersection by either lane as both lanes were available to traffic moving straight through the intersection. The state and Walker cited both the Ohio and Montana statutes discussed here, but the court correctly denied the state's invitation to the quote them depart from the plain language of the statute by reading into the statute exceptions limitations or conditions that the legislature did not express. Um, the state says that there was no contrary holding at the time of the defendant's stop. However, it's irrelevant, um, that the stop occurred prior to the Walker decision is both the state and Walker has stated the statute is not ambiguous. Furthermore, the court did not advance a new rule or statutory interpretation. It's simply found in a unanimous decision that the statute was unambiguous and that it's plain meaning did not prohibit the turn made by the defendant. Um, as the state also mentioned in the rules of the road that they can be used, um, to further interpret a statute. As Justice Hutchinson said specifically on page three of that document, it says it is intended as a tool for drivers and should not be cited as legal authority in court. And I think that it's significant here, particularly in response to Justice Hutchinson's question, because there may be times where that is the better practice, but that's not the question of whether the turn is prescribed. There may be situations in a civil situation where two cards collide, where, you know, the negligence of each party may be determined by this, but it still does not allow, particularly in a case like this, where the officer was acting on a pretext. He was not out patrolling for traffic safety. He had a very specific intent in mind. And that in fact was to pull this car over for an earlier drug interdiction. Um, so for that reason, we would ask that to affirm the trial court's order granting his nursing to suppress evidence. And that's all I have for prepared remarks. If there are any questions, I justice Jorgensen, do you have any questions? I do not. Thank you. Justice Hudson, do you have any questions? I do. Um, Mr. White, with regard to the, whether or not the officer's stop was objectively reasonable, you've cited your reasons. Um, at the time of the stop, Walker had not yet been decided and there was no specific precedent in Illinois. Is that correct? Correct. All right. And the officer's interpretation would essentially have been consistent with the decisions in Montana and Ohio. Correct. Based on their statute. Correct. All right. And the officer's decision at the time would have also been in accord with the Illinois secretary of state's rules of the road. Correct. Um, as an interpretation of it, I suppose, but the, but the important thing here is that the, the, the officer is not enforcing the secretary of state's interpretation of statutes, the officer's interpreting the statute itself. And because the officer can, can devise a way that that statute can be interpreted in order to provide him with a basis to effectuate a stop. Certainly does not mean that he was acting in an objectively reasonable manner. Well, why would it be objectively unreasonable? If other States have interpreted the statutes similar to ours in the same manner that he interpreted and the rules of the road of Illinois would interpret it the same manner. How do we conclude that his actions were objectively unreasonable? Is he didn't know more than the appellate courts and other States? Well, first of all, we don't know what he considered exactly, because that issue as is argued below too was forfeited because, and that's more than just a simple technical answer. If it forfeited, the forfeiture here has significance because we don't know what the officer's belief was. I think we're all assuming and perhaps correctly that he was interpreting this statute in a way that the other States statutes had been interpreted, but we don't know that. We don't know what the basis was for the stop or why he believes this was to happen. And in fact, the Ohio and Montana statutes actually are worded differently as we're brought up. So the fact that he may have been interpreting those statutes in order to provide a way to create a traffic stop does not in any way, you know, reduce the requirement that he's to follow the current statute, which allows for a driver to pull into any lane, which suggests more than one lane is available and more than one lane is legally provides a legal option. I understand the argument, but isn't there sort of maybe a safety or common sense underpinning to require the driver to go in the inside lane, the left lane, because we now have right turns on red, do we not? And somebody could be turning into the right lane. And if the driver then can make a turn and go into the right lane, wouldn't that enhance the possibility of a collision? And if he's in the left lane and the right turn on red, if a driver goes into the right lane, that would tend to eliminate those collisions, wouldn't it? Well, as I mentioned, there might be civil situations where that is indeed the best practice. Even in those situations, however, the person turning left is still required to yield to the oncoming person who's, I'm sorry, turning right on red, still has a red light. And even under basic, you know, civil tenants has the duty of care there not to turn in front of an oncoming person. So even in those situations, I think that this law would still apply, but the important thing here is if those changes should be made, it should be made by the legislature. And what the legislature has said so far is a reasonable interpretation of this statute as found by the unanimous Walker court is that that's, that's an accurate reading of the statute and of the legislature's intent. All right. That's all I have. Thank you, Mr. White. Hi, Mr. White. Let me first ask, what is the, what is the at least position on the motion to supplement authority? It's our position that I suppose this court can consider anything, but we would point out that for purposes of holding it as legally binding, you know, it certainly is not in that the document itself, I believe it's page three specifically says that it is not to be used as authority. It's, it's a, it, in fact, it doesn't have legal weight because as the state, you know, suggests it's the secretary of state's interpretation of the very statute that we are attempting to interpret. So, and as the state also suggests it's probably interpreted more broadly, the statute may be written because it is concerned with things other than, you know, that's not written as a criminal code. It's written as sort of a best practices manual on the, our argument here is that the criminal code does not prohibit the term that was made. All right. We will take that motion with this case and decided with the actual disposition. Mr. White, how about, don't we have testimony essentially from the officer that he stopped defendant's car because he made a wide turn in the intersection that that's the first issue, correct? Correct. Well, that's what's in the stipulation. Correct. All right. And then the movement to the right lane is, is part of the stipulation that that movement was made without a right turn signal identified, or is that just part of the state's argument? I don't, I do not believe it's in the stipulation that there was a turn signal. I could be wrong. I've actually got it in front of me. I was skimming it very quickly, but I don't think that's in the stipulation. All right. Do you have a page that you're looking at that we can reference? I am getting it. I'm actually using the state's brief because they cited verbatim, the actual stipulation and that's page three. All right. Thank you. What is, I mean, what, it's confusing. Walker simply says, or not simply, Walker says that the real issue in their case is the whenever practicable language, because the first two, the first sentence, which is compound is quite clear. Do we have the same issue here that it's the whenever practicable issue that we're discussing, or we need to resolve, or do we need to resolve in your mind the entire statutory section here? I don't think there's much here to resolve as far as the whenever practicable because of the stipulation, but we just don't have a record that support really anything. What we, what we have is, as you mentioned earlier, the stipulated that officer Florence saw nothing in the past of the, the defendant's vehicle, but that's not the same as there wasn't anything in the past, the defendant's vehicle. And as you mentioned in the motion to reconsider, the defendant would have testified that he saw the police car right behind him and was moving possibly in order to get out of the way of the, the officer. I don't think the record is complete in this case for that analysis. Okay. And we don't, unless I am wrong, we don't have any lights or sirens at the time he observed the police car. So this would not even come close to a Scott law issue. Correct. It doesn't sound like it. Correct. Okay. Thank you. All right. I don't have any additional questions. Any of my colleagues based upon what I've asked. I do not. All right. Thank you. All right. Miss Kuhn, if you wish to offer a rebuttal, you may do so. Thank you, your honor. Can you hear me? Yes, I can. I just wanted to make sure, cause I had muted my, defendant's argument can really be summed up in two words that Walker controls. And clearly it does not. It is not, as I have argued it's not binding or persuasive. You know, the fact that the defendant here had more than one option or more than one lane that you could have turned into doesn't mean that both of the lanes, you know, represent a legal option. Now, you know, defendant's argument is simply that this court should blindly follow Walker and it's reading of the statute without engaging in any independent analysis. Now, if this court considers Walker retrospectively to consider this officer's belief that the law was violated, the court also has to consider law from other jurisdictions to assess the reasonableness of the officer's belief. And defendant has not effectively distinguished the Montana or Ohio statutes that prohibit the type of left turn that was made here and, and that have the same operative language as the Illinois statute. And defendant has also not cited any statute from any other state with language similar to Illinois that supports his suggested reading. And you know, the issue here is whether at the time of the stop, the facts available to this officer would lead a reasonably prudent person in the same circumstances to believe the stop was justified. And, and, you know, we've talked about Hein, you know, justice Kagan stated in her in, in hind that if disagreeing with the officer's judgment requires hard interpretive work, then the officer's mistake, if it is found to be a mistake of law was reasonable. And here it cannot be said with certainty that the officer's understanding of the law was erroneous. And I would again,  you know, are not binding. They were written for drivers. They're written with the audience being drivers who are driving on the roads. But they, they, they provide a reasonable interpretation of how the law should be read and how the law should be considered. And at a bare minimum, the, those materials, you know, show that the officer's interpretation of the law was reasonable. If that is what's being taught to drivers. I don't know that it could be argued that that is not a reasonable interpretation of the law. And just finally, as to my good faith argument, you know, defendant has not presented, you know, in his brief or in his arguments here, any precedent that existed at the time of the stop that this officer acted in derogation of, or that he should have been aware of as governing the making of left turns. Yeah. And for the, for the good faith exception, not to be applied here, it has to be shown not only that the officer's understanding of the law was erroneous, but that the officer knew that it was erroneous when he initiated the traffic stop. And your honors, that concludes my rebuttal argument. And I would be glad to answer any questions. Justice Jorgensen. Do you have any questions? No, I do not. Thank you. Justice Hudson. I do not have any questions. All right. I have, I think one, and hopefully we can limit it to that because of time and otherwise the good faith argument. It essentially is based upon a case that I am painfully aware of, and that's people versus LaFleur. I wrote the appellate decision that was overturned, but does LaFleur actually say that we, that, you know, we just, we have to always consider that or what must we a good faith effort or good faith belief, or do we still have to consider the issue of what is objectively reasonable? Well, the, the test your honor, and I'm not sure if I understand your question correctly, the test is whether the court has to ask in a, you know, the objective question of whether a reasonably well-trained officer would have known the search was illegal or whether the traffic stop in this case was illegal, you know, given all of the relevant circumstances. Do we even know from this record, if the police officer had read this, this 11 8 0 1 is that. I, you're asking if we know if the officer had read the statute. Right. Well, I mean, I, I don't, I don't, you know, I don't presume that every officer, I mean, I've not read every statute in the, in the Illinois vehicle code. I, I presume that that officers are, are, are, you know, educated and advised of the traffic laws and what is a valid stop and what isn't, what, what is a violation of the vehicle code and what isn't you know, at the time this officer, you know, what was, was, was, just before this officer pulled over this defendant, I don't think he pulled out the statute and read it and said, yep, I can, I can pull this guy over, but I think, you know, officers, you know, have a, have a, should have an understanding of the traffic laws. So whether he read this particular statute or not, and again, I, I would again point to the rules of the road as saying, this is a reasonable interpretation of the statute and what officers are, are, are going off of. And, and, you know, I think it's safe to assume that he knew the statute. And, and I would again point to Walker, the officer in Walker and the officer here, both initiated the stop based on the same underlying understanding of the statute. So I would argue that it's not, in this case, it's not an outlier. This was not a, an officer who was acting, you know, you know, in derogation of the law. All right. Thank you. I have no other questions. Any other questions from my colleagues based upon mine? No. All right. Well, thank you counsel for your arguments this morning. We will take the motion to supplement under advisement with the case. And this oral argument is now concluded and we will stand in recess to prepare for our next hearing. Thank you very much. Thank you.